E-FILED
Monday, 02 December, 2019  11:50:01 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| MICHAEL ANTHONY CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Case No. 19-cv-1305-JES |
| | ) | |
| FREDERICK ENTZEL, Warden | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

The respondent, for his response to the petitioner's petition (R. 1, 2[1]) for writ of habeas corpus under 28 U.S.C. § 2241, states:

**INTRODUCTION**

Michael Anthony Clark is a convicted drug dealer who has already exhausted every opportunity to challenge his 2005 drug and gun convictions. Yet he brings this petition pursuant to 28 U.S.C. § 2241 and the saving clause of 28 U.S.C. § 2255(e), arguing that the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), affords him another shot at vacating his two convictions for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Specifically, Clark argues that he *thought* his civil rights were restored prior to his

---

[1] Citations to "R." refer to filings in Clark's present 2241 petition, No. 19-cv-1305 (CDIL), and citations to "Crim. R." refer to filings in Clark's criminal case and prior 2255 proceeding, No. 05-cr-80810 (EDMI).

1

2005 convictions, and therefore that *Rehaif* calls into question whether he had the requisite intent to be convicted of being a felon in possession. (*See* R. 1, R. 2). But *Rehaif* does not apply to his case. *Rehaif* only extended the statute's "knowingly" requirement to § 922(g)(1)'s prior felony element—requiring that the defendant knew he had previously been convicted of a felony. Nothing in *Rehaif* extends that knowledge requirement further, to the affirmative defense in 18 U.S.C. § 921 on which Clark relies. So even after *Rehaif*, the government only has to prove that Clark knew about his *prior felony conviction*; it does not have to take the additional step of proving (under § 921(a)(20) or otherwise) that he knew he was prohibited from possessing a firearm. Ignorance of the law remains no defense. Thus, *Rehaif* does not permit Clark to seek relief under the saving clause.

But even if *Rehaif* were to apply as Clark now argues, the record forecloses his claim. Clark's own filings establish that he did, in fact, know that his gun rights were not restored under Michigan law when he illegally possessed the guns here. And because Clark is serving a 600-month concurrent sentence for his continuing criminal enterprise conviction—which is not even arguably affected by *Rehaif*—the concurrent sentence doctrine also forecloses Clark from obtaining any relief. Clark's petition should be denied.

2

## FACTUAL BACKGROUND

**I.      Clark's 2005 Convictions and Direct Appeal**

In 2005, Michael Anthony Clark was charged in the United States District Court for the Eastern District of Michigan with conspiracies to distribute marijuana, cocaine, and cocaine base, as well as running a continuing criminal enterprise with respect to the marijuana and cocaine conspiracies, being a felon in possession of a firearm, money laundering, a money laundering conspiracy, and several counts of unlawful use of a communication facility. (Crim. R. 259-2: Superseding Indictment, Pg. ID 1623–61). Before trial, Clark moved to dismiss his two felon in possession counts, arguing that his rights to possess a firearm following his 1984 robbery conviction had been restored in 1990, prior to a 1992 change in Michigan law which established a new procedure for restoring gun rights for convicted felons. (Crim. R. 156: Motion to Dismiss). Clark conceded, for purposes of his motion, that his rights had not been restored under the procedure outlined in the 1992 law. (*Id.* at 7). The district court judge denied Clark's motion, finding that the *Ex Post Facto* clauses of both the United States and Michigan constitutions were not violated by Michigan's 1992 law. (Crim. R. 210: Opinion and Order, at 3–5).

Clark proceeded to trial, and the jury convicted him on the drug and felon in possession counts. (Crim. R. 351: Verdict Form, Pg. ID 2477–84). The district

3

judge sentenced Clark to concurrent sentences of 600 months for continuing a criminal enterprise, 600 months for conspiracy to distribute cocaine, 480 months for conspiracy to distribute marijuana, 120 months for the felon in possession counts, and 48 months for several unlawful uses of a communication facility. (Crim. R. 455: Original Judgment, Pg. ID 2832–37). The Sixth Circuit affirmed Clark's convictions, except the marijuana and cocaine conspiracies, which the court held were lesser-included offenses of the continuing criminal enterprise conviction (and thus violated the Double Jeopardy Clause). *United States v. Clark*, 454 Fed. Appx. 435 (6th Cir. 2011). The Sixth Circuit also remanded for resentencing. *Id.* at 449. The district judge then resentenced Clark to essentially the same sentence he received originally, including the 600-month sentence for the continuing criminal enterprise. (Crim. R. 601: Amended Judgment, Pg. ID 7407–13).

## II.     Clark's Motions Pursuant to 2255

Clark filed several motions to vacate his sentence under 28 U.S.C. § 2255. (Crim. R. 627: Motion to Vacate, Pg. ID 7580–95; Crim. R. 655: Amended Motion, Pg. ID 7800–54; Crim. R. 663: Supplemental Motion, Pg. ID 7885–92). He raised a host of claims, including that his trial counsel had been ineffective at competently litigating his innocence on his felon in possession convictions. (Crim. R. 627: Motion to Vacate Sentence Under 2255, Page ID 759). The magistrate judge

4

recommended denying Clark's motion in its entirety. (Crim. R. 683: Report and Recommendation, Page ID 7983–8004). The district judge issued an order adopting the magistrate judge's report and recommendation. (Crim. R. 692: Order Adopting 683 Report and Recommendation, Page ID 8059–66).

Clark filed a notice of appeal and a petition for a certificate of appealability (Crim. R. 694, Page ID 8068–70; Crim. R. 695, Page ID 8071–8073). The Sixth Circuit denied Clark's petition for a certificate of appealability, again rejecting Clark's claims that his trial counsel was ineffective in litigating his felon in possession convictions. (Crim. R. 701).

### III.  Clark's Present 2241 Petition

Clark has now filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this Court. (R. 1: 2241 Petition; R. 2: Memorandum of Law in Support of 2241 Petition). Clark contends that the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), affords him a new basis for challenging his felon in possession convictions. He claims that *Rehaif* not only required the government to prove a defendant's knowledge of his prior felony under § 922(g)(1), but also required the government to disprove the defendant's knowledge for the affirmative defenses in § 921 — including as to Clark's new claim under § 921(a)(20) that he thought his civil rights had been restored. Neither the law nor the facts here support Clark's argument.

## JURISDICTION

A saving clause habeas claim under 28 U.S.C. § 2241 arises under federal law. This Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005); *see also Prevatte v. Merlack*, 865 F.3d 894, 901 (7th Cir. 2017) ("failure to satisfy § 2255(e) does not affect the subject-matter jurisdiction to consider a § 2241 petition") (citations omitted).

## LEGAL BACKGROUND

At common law, the writ of habeas corpus was used to challenge the validity of executive detention without trial. *See Lindh v. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). In the early part of the twentieth century, the Supreme Court broadly interpreted later-enacted statutes authorizing habeas corpus relief in a manner that transformed the writ into a device for "[c]ollateral review of judgments entered after full opportunity for litigation." *Id.* at 868. These decisions led to a large increase in the number of federal prisoner habeas corpus petitions. *See United States v. Hayman*, 342 U.S. 205, 211-213 (1952). And these filings disproportionately burdened those district courts whose territorial jurisdiction encompassed a major penal institution because a writ of "habeas corpus" acts on the prisoner's jailer and must therefore be filed in the district of his confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004); *Wales v. Whitney*, 114 U.S. 564, 574 (1885); 28 U.S.C. § 2241(a). The resolution of these

6

petitions was problematic, however, because the districts of confinement were often located "far from the scene of the facts, the homes of the witnesses and the records of the sentencing court." *Hayman*, 342 U.S. at 213–214.

In 1948, Congress responded favorably to a proposal by the Judicial Conference "to alleviate the burden of habeas corpus petitions filed by federal prisoners in the district of confinement," *United States v. Addonizio*, 442 U.S. 178, 185 (1979), by creating a substitute post-conviction remedy for federal prisoners. Codified at 28 U.S.C. § 2255(a), this new statutory motion procedure diverted federal prisoner collateral attacks away from the district of confinement and channeled them into "the more convenient jurisdiction of the sentencing court," *Hayman*, 342 U.S. at 219, while still "afford[ing] federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974). To that end, Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

The 1948 legislation also contained an exclusivity provision that reflected Congress's intent that this new motion remedy be used instead of, and not in addition to, the traditional habeas corpus remedy. This provision states that

7

district courts "shall not . . . entertain[]" a federal prisoner's application for a writ of habeas corpus "unless it appears that the remedy by motion [under Section 2255] is inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e); *see also Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) ("Federal prisoners who seek to bring collateral attacks on their conviction or sentence must ordinarily bring an action under 28 U.S.C. § 2255."). Although there is no legislative history to illuminate the meaning of the "unless" caveat of Section 2255(e), the Seventh Circuit has explained that it most likely was included to guard against any claim that the exclusivity proviso (which barred prisoners from seeking "habeas corpus" relief) violated the Suspension Clause.[2] *See, e.g., Taylor v. Gilkey*, 314 F.3d 832, 834-35 (7th Cir. 2002); *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998).

Because, the theory goes, this provision would save Section 2255 from constitutional invalidation, it is often called the "saving clause" (or "savings clause"). As it turns out, the clause was not constitutionally necessary because "the 'writ' protected by the [Suspension Clause] is the writ known in 1789 — the pretrial writ used to thwart unjustified detention by the executive branch — and not the statutory extensions of collateral review later enacted by Congress." *Lindh*, 96 F.3d

---

[2] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

at 867-68; *see Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005) ("What is protected from suspension is the writ that limits a person's detention by the executive branch without trial."). Nonetheless, even though the saving clause is apparently not a constitutional necessity, it "remains in force as a statutory rule of decision." *Taylor*, 314 F.3d at 835.

*In Davenport*, 147 F.3d 605, was the Seventh Circuit's first, and still most comprehensive, interpretation of this "statutory rule of decision." *Davenport* concluded that Section 2255 may fairly be termed "inadequate or ineffective" within the meaning of Section 2255(e) when an intervening, retroactive decision of the Supreme Court decided after a federal prisoner has completed his initial collateral attack under Section 2255 narrows the reach of a substantive criminal statute so as to establish that the prisoner has been convicted of a non-existent offense. 147 F.3d at 608-12.

The court found that a prisoner who had met this standard when he claimed that his conviction for "using" a firearm during and in relation to a drug offense under 18 U.S.C. § 924(c) based on evidence that he merely possessed a firearm — conduct that [the Seventh Circuit] (and others) had concluded was sufficient to constitute "use" — was no longer a crime after *Bailey* v. *United States*, 516 U.S. 137 (1995), which narrowed the definition of "use" to those instances where the firearm was actively employed. Because *Bailey* was retroactive to cases on

collateral review and was decided after the prisoner completed his initial Section 2255 motion, when prior circuit law foreclosed his possession-as-use challenge such that he did not have a reasonable opportunity to test the legality of his detention earlier, the prisoner could seek relief from this "fundamental defect" under Section 2241. *Id.* at 611; *see also United States* v. *Prevatte*, 300 F.3d 792, 799-800 (7th Cir. 2002) (summarizing *Davenport*'s holding).

The Seventh Circuit has, generally speaking, since condensed *Davenport*'s holding into a three-part test. *See, e.g., Montana v. Cross*, 829 F.3d 775, 783-84 (7th Cir. 2016). A petitioner who brings a *Davenport* petition under 28 U.S.C. § 2241 must establish (i) his claim relies on a retroactive decision of statutory interpretation, and not a constitutional one that he could invoke in a successive Section 2255 motion; (ii) he could not have brought his claim on direct appeal or in his initial Section 2255 motion; and (iii) the error is grave enough to be deemed a miscarriage of justice, such as a conviction for a non-existent offense. *Id.* (citations omitted). Regarding the third part of the test, a "miscarriage of justice" includes a sentence that exceeds the applicable maximum under a statute or under the mandatory Guidelines. *See, e.g., Brown v. Rios*, 696 F.3d 638, 640-41 (7th Cir. 2012) (maximum sentence); *Brown v. Caraway*, 719 F.3d 583, 587-88 (7th Cir. 2013) (mandatory career-offender guideline sentence).

Clark's petition fails the third prong: that Clark has raised an error in his conviction grave enough to be deemed a miscarriage of justice. This is the case for two reasons: (1) The Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019)—on which Clark relies to challenge his 2005 felon in possession convictions—does not apply to Clark's claims in the way he suggest, and (2) even if *Rehaif* did apply as Clark now claims, the record is clear that Clark knew his civil rights had not been restored and that he had the requisite intent to be convicted under 18 U.S.C. § 922(g)(1). In addition, because Clark's 600-month sentence for his continuing criminal enterprise conviction remains intact regardless of what happens here, the concurrent sentence doctrine also bars him from obtaining any relief.

## ARGUMENT

### I.  Clark's Claim is Not Cognizable in a 2241 Petition

#### a.  *Rehaif* does not apply to Clark's claim

In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Supreme Court examined the elements of a conviction under 18 U.S.C §§ 922(g) and 924(a)(2). The Court held that the statute's mens rea in § 924(a)(2)—"knowingly"—applied to all of the non-jurisdictional elements in § 922(g), including the defendant's "status as a person barred from possessing a firearm." *Id.* at 2195. So to convict a defendant under § 922(g)(1) after *Rehaif*, the government must not only prove that he was

11

previously convicted of a felony, but also prove that he *knew* he was previously convicted of a felony. *See id.* at 2200.

Clark does not now contest—nor has he ever contested—that when he possessed guns in February and May of 2005, he knew of his previous felony conviction for robbery. (*See* Crim. R. 156: Motion to Dismiss; Crim. R. 627: Motion to Vacate Sentence Pursuant to 2255; R. 2: Memorandum of Law in Support of 2241 Petition). Rather, he argues that *Rehaif* now opens the door to a twist on his previous affirmative defense, requiring the government to disprove his reformulated contention that he thought his gun rights had been restored under Michigan law. (R. 2: Memorandum of Law in Support of 2241 Petition, at 91–110). Without stating so explicitly, Clark relies on a separate statutory provision—18 U.S.C. § 921(a)(20)—which states that a "crime punishable by imprisonment for a term exceeding one year"—as this language appears in § 922(g)(1)—does not include "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored." 18 U.S.C. § 921(a)(20). In addition to this definition, § 921 provides a whole host of other definitions and affirmative defenses to gun prosecutions under Title 18, including specific definitions of various firearms and other weapons.

But nothing in *Rehaif* stretches the "knowingly" mens rea in § 924(a)(2) beyond the elements of § 922(g), requiring the government to disprove every

12

possible definitional carve-out or affirmative defense in § 921. Unlike the element in § 922(g)(1) that a defendant be convicted of a felony in order to render them prohibited from possessing a firearm, § 921(a)(20)'s exception for a defendant's prior restoration of civil rights is an affirmative defense, not an element of the offense. *See United States v. Zuniga*, 767 F.3d 712, 719 (7th Cir. 2014) (holding that the trial judge—not the jury—properly determined whether defendant's rights had been restored for purposes of a § 922(g)(1) conviction, as such determination constituted "an affirmative defense, not an element of the offense."); *see also United States v. Stockett*, 157 Fed. Appx. 920 (7th Cir. 2005) (noting that "[s]everal circuits have held that § 921(a)(20) is essentially an affirmative defense that must be raised by the defendant before the government has any obligation to prove the continuing vitality of a conviction."). Thus, the government is not required to prove—as an element of § 922(g)(1)—that a defendant's civil rights were *not* restored in order to sustain a felon in possession conviction. *See Zuniga*, 767 F. 3d at 719; *cf. United States v. Smith*, 981 F.2d 887, 891–92 (6th Cir. 1992) (requiring a defendant to raise the "antique firearm[]" exception under 921 with "sufficient evidence" before "the burden shifts to the government to disprove its applicability").

If the government is not required to disprove the existence of § 921(a)(20)'s affirmative defense as an element of every § 922(g) offense, then it follows that the

government need not disprove the defendant's *knowledge* of § 921(a)(20) as an element of every § 922(g) offense. *Rehaif*, after all, only extended the "knowingly" mens rea to § 922(g)'s elements, and then only as a matter of statutory construction—because § 924(a)(2) requires a "knowing[] violat[ion]" of § 922(g). By contrast, nothing in § 924(a)(2) mentions § 921 at all, much less requires the government to disprove the defendant's knowledge of § 921's various carve-outs. Indeed, Clark's claim suggests that in a post-*Rehaif* world, the government must not only prove that a defendant knew he was previously convicted of a felony, but also disprove his potential knowledge and the existence of *every* possible affirmative defense and exception in § 921. *Rehaif* does not require this. And as the Supreme Court has held in analogous contexts, "proof of the nonexistence of all affirmative defenses has never been constitutionally required." *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)); *see also Dixon v. United States*, 548 U.S. 1 (2006).

In short, *Rehaif* changes nothing about the validity of Clark's convictions. The government has proven every element of Clark's felon in possession convictions (including that Clark *knew* he was a convicted felon), and it was never required to prove—nor is it required to do so now—that Clark *knew* his civil rights to possess a firearm had not been restored. Thus, Clark he has not raised an error with his convictions "grave enough . . . to be deemed a miscarriage of justice."

*Montana*, 829 F.3d at 783. Indeed, he has raised no error with his convictions at all, and the saving clause does not permit Clark to bring a petition under 28 U.S.C. § 2241 on this claim.

> **b.     Even if *Rehaif* does apply, the Government preserves for further review its position that the motion remedy under 2255 is inadequate or ineffective to test the legality of a prisoner's detention only if a class of argument is categorically excluded under the statute**

The government acknowledges that *Davenport* is the "law of the circuit." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019). The government, however, preserves for further review its position that a motion to vacate under Section 2255 is inadequate or ineffective to test the legality of a prisoner's detention only when it cannot remedy a particular category of claim. *See generally McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc); *Prost v. Anderson*, 636 F.3d 578, 584 (10th Cir. 2011); *Brown v. Caraway*, 719 F.3d at 597 (Easterbrook, C.J., statement concerning the circulation of the opinion under Circuit Rule 40(e)).

First, the language of the saving clause suggests a focus on whether a particular challenge to the legality of the prisoner's detention is cognizable under Section 2255, not on the likelihood that the challenge would have succeeded in a particular court at a particular time. Thus, that a defendant's argument would have been contrary to binding precedent at the time of direct appeal or Section 2255 motion does not render the motion remedy inadequate or ineffective. *Cf.*

*Perry v. United States*, 877 F.3d 751, 755 (7th Cir. 2018) ("If [the defendant] met an appellate error . . . , he could have petitioned the court to hear his case en banc . . . or sought certiorari from the Supreme Court . . . .").

Second, *Davenport* and its successors have placed the saving clause in conflict with Section 2255(h). It is anomalous to characterize the motion remedy as inadequate or ineffective when the unavailability of Section 2255 relief in a particular case results from Congress's choice regarding under which circumstances a defendant may file a second or successive § 2255 motion. *See Brown v. Caraway*, 719 F.3d at 600 (Easterbrook, C.J.) ("What sense can it make to hold that the 1996 amendments to § 2255 are self-defeating?").

Third, prisoners who are permitted to use the saving clause to attack their convictions or sentences have greater latitude in pursuing their claims than prisoners who pursue relief under Section 2255. Unlike a movant who brings a motion under Section 2255, a petitioner under Section 2241 has no statute of limitations he must meet, need not obtain approval to file a second or successive collateral attack, and need not obtain a certificate of appealability to appeal a district court's decision. *Compare* 28 U.S.C. § 2241 *with* 28 U.S.C. §§ 2255, 2244(b)(3), and 2253(c). And now there is, at least facially, a question whether a prisoner may seek saving clause relief based on retroactive, circuit-level decision of statutory interpretation, even though "a prisoner with a second or successive *constitutional*

16

claim can secure relief only when the Supreme Court acts." *Chazen*, 938 F.3d at 864 (Barrett, J., concurring); *see* 28 U.S.C. § 2255(h)(2). "That is an odd state of affairs." *Id.* In short, a saving clause petitioner has a remedy superior to that of a Section 2255 movant. It is farfetched to suppose that Congress intended such results when it enacted the Antiterrorism and Effective Death Penalty Act in 1996 that established the one-year limitations period and the conditions precedent for bringing a successive Section 2255 motion and obtaining appellate review of the denial of a Section 2255 motion.

Finally, permitting prisoners to resort to Section 2241 to bring claims that fall within the scope of Section 2255(a) undermines one of the primary purposes behind Congress's enactment of Section 2255 in 1948: to address the serious administrative problems caused by the requirement that habeas petitions be brought in the district of incarceration. *See Hayman*, 342 U.S. at 210-19; *see also Brown*, 719 F.3d at 600 (Easterbrook, C.J.) ("Finally, the panel's decision undermines one of § 2255's principal objectives: directing post-judgment litigation to the sentencing court.").

In *Chazen*, 938 F.3d 851, Judge Barrett wrote separately to express concern about the inconsistency and "staggering [complex-ity]" of the court's saving clause precedent. *Id.* at 863 (Barrett, J., concurring). The inconsistency and complexity of the Seventh Circuit's saving clause jurisprudence is due to *Davenport*'s

17

determination that Section 2255(h)(2) renders the motion remedy inadequate or ineffective by its omission of retroactive Supreme Court decisions of statutory interpretation as a basis to bring a successive motion. However, "[d]eciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice[.]" *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 646-47 (1990) (quoting *Rodriguez v. United States*, 480 U.S. 522, 526 (1987)). Congress made a deliberate choice in enacting Section 2255(h)(2). When a deliberate congressional choice is judicially nullified, the result, as one now can readily see, is the staggering complexity and inconsistency of the court's saving clause jurisprudence over the past 20 years. *See Webster v. Daniels*, 784 F.3d 1123, 1149 (7th Cir. 2015) (Easterbrook, J., dissenting) ("any creative judge can find a reason for turning to § 2241 whenever a court of appeals decides that § 2255(h) blocks successive motion under that statute"). In sum, "[j]udicial solutions beget judicial problems," and "[t]he way courts have kludged the saving clause is a perfect example." *Wright v. Spaulding*, 939 F.3d 695, 707 (6th Cir. 2019) (Thapar, J., concurring).

## II.   In any event, Clark knew that he was prohibited from possessing a firearm at the time of his gun convictions

But even if this Court finds that Clark's claim is cognizable under *Rehaif* in a 2241 petition, Clark's own filings demonstrate that Clark not only knew he was a felon—a fact Clark does not even dispute—but knew that his civil rights were

*not* restored prior to possessing the guns here. Thus, Clark's 2241 petition should be denied on that basis too.

The primary factual support for Clark's argument is his mistaken contention that the government dismissed a previous federal complaint against him in 2000 because the government learned from the Wayne County Gun Board that "[Clark's] gun rights were not restricted." (R. 2 at 93). But the notes that Clark attaches to his petition establish the opposite. Those handwritten notes from the Bureau of Alcohol, Tobacco and Firearms, detailing various events in Clark's case, contain the following entry from August 3, 2000: "Email request to confirm whether gun rights restored by Wayne Cty. Gun Board – *Negative*." (R. 2 at 100, *emphasis added*). Those notes thus contradict, rather than support, Clark's claim: they show that his civil rights had *not* been restored. And to the extent Clark reviewed those notes before 2005, when he possessed the guns underlying his felon in possession convictions here, they could not have supported any belief that his civil rights had been restored.

The other documentation that Clark attaches to his petition likewise undermines his claim. Clark claims that after the government dismissed its complaint against him, he hired a lawyer "to help attain a concealed carrying license since his right to possess had been established by both State and Federal Courts." (R. 2 at 93). But his only support for that contention is a letter dated

19

October 12, 2001, from his attorney to the Oakland County Concealed Weapons

Licensing Board. The letter reads:

> Dear Sirs,
>
> Enclosed herewith for filing please find Application for Restoration of Firearms Rights (MCL 28.424). If you should need any more information with respect to the enclosed Application or if you have any questions or comments, please do not hesitate to contact me.

(*Id.* at 105). Clark conspicuously fails to attach any response from the Oakland

County Concealed Weapons Licensing Board; nor does he allege that he ever

received one.

That failure is fatal to Clark's argument. First, it is curious that Clark would

hire an attorney to submit an application for the restoration of his gun rights in

October 2001 if, as Clark claims, his right to possess a firearm had been previously

established when the federal government dismissed its complaint against him in

2000. Second, the conduct underlying Clark's gun convictions here took place in

February and May 2005—approximately three-and-a half years *after* Clark applied

for the restoration of his rights under Michigan law. (R. 259-2: Superseding

Indictment, Page ID 1654–55). Unless, bizarrely, Clark has withheld the fact that

he received a favorable response from the Oakland County Concealed Weapons

Licensing Board between October 2001 and February 2005, it would seem that

Clark did not receive such a response, and therefore knew in 2005 that his rights

had not been restored.

20

This conclusion is further supported by the arguments that Clark made in 2006 when he attempted to have his two felon in possession counts dismissed. In attempting to dismiss these counts, Clark argued that the 1992 Michigan law establishing the procedure for those convicted of a felony to have their gun rights restored violated the *Ex Post Facto* clauses of both the Michigan and United States Constitutions. (R. 156: Motion to Dismiss Counts 41 and 42 of the Indictment, at 7). Clark even stated in his motion, "For purposes of this motion, Mr. Clark will assume that his Michigan firearm rights have not been restored under this procedure." (*Id.*). If Clark's gun rights had been successfully restored following his 2001 application to the Oakland County Concealed Weapons Licensing Board, he would not have resorted to arguing about changes to the law from the early 1990s. Instead, he would have just pointed to what happened in 2001. His decision to litigate the earlier, legal question thus confirms that Clark knew when he possessed the guns in 2005 that his rights had not actually been restored. And what's more, Clark cannot claim ignorance of the particular procedure under which he was required to restore his rights, as he clearly attempted to have his rights restored in 2001, but was unsuccessful.

*Rehaif* requires the government to prove that a defendant had the requisite knowledge under § 922(g), including that the defendant *knew* he had previously convicted of a felony. *Rehaif*, 139 S. Ct. at 2200. While Clark now claims that he

21

lacked this intent because he *thought* that his right to possess a firearm had been restored following his 1984 robbery conviction, the record shows otherwise. Clark's last-ditch attempt to challenge his gun convictions by presenting an incomplete and false narrative to this Court regarding his knowledge of his gun rights at the time of his 2005 convictions should be dismissed, and his petition pursuant to 28 U.S.C. § 2241 should be denied.

## III.   The concurrent sentence doctrine also bars Clark's claim for relief

Clark received several concurrent sentences for his crimes: a 600-month sentence for continuing a criminal enterprise, several 48-month sentences for the unlawful use of communication facilities, and two-120 month sentences for being a felon in possession of a firearm. (Crim. R. 601: Amended Judgment, Pg. ID 7407–13). Yet Clark's present § 2241 petition only challenges his felon in possession convictions. (*See* R. 1, R. 2). So even if Clark successfully challenged his felon in possession convictions, he would still be required to serve the remainder of his 600-month sentence for continuing a criminal enterprise. In fact, Clark's 120-month sentences for his felon in possession convictions have already expired.

The concurrent sentence doctrine is a discretionary bar to judicial review that allows a court to "decline to review a conviction carrying a concurrent sentence when one 'concurrent' conviction has been found valid." *United States v. Kimberlin*, 675 F.2d 866, 867 (7th Cir. 1982) (citing *Benton v. Maryland*, 395 U.S. 784,

801–802 (1969)). The application of this doctrine is appropriate here, where the outcome of Clark's § 2241 petition has no bearing on the remaining custodial sentence he will serve. And the imposition of special assessments to each of Clark's convictions is irrelevant, as "[a] collateral attack under § 2241, § 2254, or § 2255 contests only custody . . . and not fines or special assessments" for purposes of the concurrent sentence doctrine. *Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012).

The application of the concurrent sentence doctrine is also particularly appropriate in the context of a saving clause petition, which presents "'the unseemly spectacle of [a] federal district court[] trying the regularity of proceedings had in [a] court[] of coordinate jurisdiction.'" *Webster*, 784 F.3d at 1148 (Easterbrook, J., dissenting) (citation omitted). This Court should avoid the spectacle of telling a coordinate district court that it allegedly erred where, as here, the puported *Rehaif* error would clearly have no impact on the petitoner's aggregate sentence. This fact is evidenced by the sentencing court's re-imposition of the same 600-month sentence on remand after direct appeal.

The concurrent sentence doctrine therefore provides an additional reason to deny Clark's petition.

## CONCLUSION

For the reasons presented, this Court should deny Clark's petition for a writ of habeas corpus.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

By:      /s/Greggory R. Walters
Assistant United States Attorney
One Technology Plaza
211 Fulton Street, Suite 400
Peoria, Illinois 61602
(309) 671-7050

## CERTIFICATE OF SERVICE

I certify that on December 2, 2019, I electronically filed the foregoing, with appendix, with the Clerk of the Court of the United States District Court for the Central District of Illinois by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that some of the participants in this case are not CM/ECF users. I have mailed the foregoing, with appendix, by First-Class Mail and postage prepaid to the following non-CM/ECF participant:

Michael Anthony Clark
Reg. No. 28321-039
Federal Correction Institution
FCI Pekin
P.O. Box 5000
Pekin, Illinois 61555

/s/Greggory R. Walters
Assistant United States Attorney

24