E-FILED
Monday, 23 December, 2019 ·03:50:01 PM
Clerk, U.S. District Court, ILCD

**ATTACHMENTS**

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
- - - - - - - - - - - - - - )
                            )
In the Matter of:           )
                            )
    FEDERAL GRAND JURY       )
                            )
- - - - - - - - - - - - - - )
```

Case No.   05-3-58

Proceedings had and testimony taken

of NATHANIEL FOUNTAIN before a Federal Grand Jury at

Room 530, Federal Building, Detroit, Michigan, on

Wednesday, September 7, 2005.


PRESENT:

        KAREN GIBBS
        Assistant United States Attorney

REPORTED BY:

    Machelle Billingslea-Moore, CSR-5797

Ford Building                **Luzod Reporting Service**        30903 Northwestern Hwy.
615 Griswold, Suite 815           (313) 962-1176                Suite 100
Detroit, MI 48226                                               Farmington Hills, MI 48333

8371

1    Q.    Okay.  You said this confidential source said

2          that Mr. Clark was capable of distributing

3          multiple thousand pounds of marijuana; and

4          multiple hundred pounds of cocaine; is that

5          correct?

6    A.    Yes, ma'am.

7    Q.    Okay.  What was basis of his information?

8    A.    He had been with Mr. Clark several times.

9          Approximately six occasions he had seen Mr. Clark

10         distributing multi-kilos of cocaine.

11   Q.    And when were those dates, over a period of time?

12   A.    Yes, ma'am.

13   Q.    Over what period of time?

14   A.    From approximately 1996 until 2004.

15   Q.    Now, was the investigation or the file pertaining

16         to Mr. Clark based upon any other confidential

17         source information?

18   A.    Yes, ma'am.  There were some previous

19         confidential sources in the case file that

20         another special agent had debriefed, prior to

21         myself and Agent Caldwell getting to the Detroit

22         office.

23   Q.    You tried to familiarize yourself with that case;

24         is that correct?

25   A.    Yes, ma'am.

8

Ford Building
615 Griswold, Suite 815
Detroit, MI 48226

**Luzod Reporting Service**
(313) 962-1176

30903 Northwestern Hwy.
Suite 100
Farmington Hills, MI 48333

8378

1   Q.   Okay.  What was the information that was listed

2        from the previous sources?

3   A.   It was the same type of information that our

4        confidential source had provided us; that Michael

5        Clark was a large-scale narcotics trafficker; and

6        they had also been privy to information that was,

7        I guess, provided by Michael Clark; that he had

8        committed several murders in the Detroit area;

9        and also had hired several people to commit

10       murders on his behalf.

11  Q.   Okay.  So, when you became familial with

12       Mr. Clark, you opened an investigation.  What

13       else did your examination entail?

14  A.   Our investigation started pretty much in

15       December, 2004 when the green Dodge pick-up left

16       the car wash.  Myself and Agent Caldwell had the

17       vehicle stopped in St. Clair Shores along I-94.

18  Q.   What was the basis of the stop?

19  A.   The basis of the stop by St. Clair Shores -- I

20       think he was speeding or he failed to signal a

21       lane change; something of that nature.  It was a

22       traffic infraction.

23             When they pulled him over, he

24       had outstanding warrants for criminal month

25       support.  He hadn't paid child support, so he was

9

Ford Building
615 Griswold, Suite 813
Detroit, MI 48226

**Luzod Reporting Service**
(313) 962-1176

30903 Northwestern Hwy.
Suite 100
Farmington Hills, MI 48333

8379

1    A.    We ran criminal histories on a subscriber,

2          information that we received from the phone

3          companies.

4    Q.    Okay.  What types of criminal histories did the

5          individuals have that had pin registers --

6          recorded calls to and from Mr. Clark?

7    A.    From several of the numerous associates that

8          Mr. Clark had been in contact with had drug

9          histories.  Numerous ones had homicides on their

10         criminal histories.  Just violent drug dealers,

11         basically.

12   Q.    Okay.  So as a result of the pin registers, you

13         were able to obtain a Court Order to intercept

14         phone calls on Mr. Clark's phone; is that

15         correct?

16   A.    Yes, ma'am.

17   Q.    That was on the T-mobile phone you just

18         referenced; is that correct?

19   A.    Yes, ma'am.

20   Q.    313-522-4325?

21   A.    Yes, ma'am.

22   Q.    Okay.  When you did you obtain the Court Order?

23   A.    The Court Order authorizing the wire tap on

24         313-522-4325 was issued on February 8th, 2005.

25   Q.    And once the Court Order was authorized, what

19

Ford Building
615 Griswold, Suite 815
Detroit, MI 48226

**Luzod Reporting Service**
(313) 962-1176

30903 Northwestern Hwy.
Suite 100
Farmington Hills, MI 48333

8389

1    steps did you do to, in fact, start listening --

2    intercepting Mr. Clark's telephone?

3  A.  First, the U. S. attorney that was present at

4    that time -- it's called minimization -- which

5    all agents required to attend and read a copy of

6    the Affidavit, before they can listen to the

7    calls.

8         So everybody in our group --

9    including the violent crimes task force, which is

10    a DPD crew, I guess is what you'd call them --

11    they also read the Affidavits.  Which VCTF,

12    consists of Detroit Police Department, ATF, FBI,

13    and several other agencies all grouped into one.

14  Q.  When you say VCTF, you mean violent crimes task

15    force?

16  A.  Yes, ma'am.  And basically, everybody had to read

17    the Affidavit.  Once they read it, then they

18    could monitor the phone calls that were coming

19    in.

20  Q.  So you had several different agents monitoring

21    telephone calls that were coming to and from

22    Mr. Clark's phone; is that correct?

23  A.  Yes, ma'am.

24  Q.  And how long was the Court Order authorized to

25    run?

20

*Ford Building*
*615 Griswold, Suite 815*
*Detroit, MI 48226*

**Luzod Reporting Service**
*(313) 962-1176*

*30903 Northwestern Hwy.*
*Suite 100*
*Farmington Hills, MI 48333*

8390

Patrick Caldwell - Cross
Wednesday/10-12-2006                    112

1    well?

2        A.  If he had a felony conviction, yes, he could be

3    charged.

4        Q.  You didn't even check that, did you?

5        A.  I told you I didn't know if he was checked or not.

6    I am pretty sure he was but I don't know for certain.

7        Q.  Did you run a background check on all of these

8    weapons?

9        A.  When we were seizing them?

10       Q.  Or subsequently.

11       A.  Agent Jessie Lopez  with the Immigrations Customs

12   Enforcement, he ran checks on them.

13       Q.  Now, do any of these weapons have obliterated serial

14   untiles?

15       A.  No, sir.

16       Q.  Are any of them inherently illegal?  That is, there

17   was not a time when it was legal to purchase a weapon such

18   as this?

19       A.  I'm not sure of that.

20       Q.  When I ask about a background check you can take

21   that serial number, for instance, and find out everything

22   from where and when it was manufactured to where and when

23   it was sold so long as it was from a place that had those

24   reporting requirements, correct?

25       A.  I am not sure of that.

*United States of America v. Michael Anthony Clark*

Patrick Caldwell - Cross
Wednesday/10-12-2006                          113

1    Q.  Would you tell me this?  If one of those weapons was

2    purchased from K-Mart you would be able to find that

3    because K-Mart has to report every gun that it sells

4    together with the serial number, etc., correct?

5    A.  I believe ATF can determine that.  All I know is run

6    the serial number and make sure if it's stolen or not.

7    Q.  Did you term whether any of these weapons were

8    stolen?

9    A.  No, sir.

10   Q.  You didn't determine or they were not?

11   A.  They were not stolen.

12   Q.  Did you determine whether any of them were obtained

13   in any other than a legal manner?

14   A.  I don't know.

15   Q.  There is nothing inherently illegal about a single

16   title that you confiscated from that Prairie residence,

17   isn't that correct?

18   A.  I don't know about a silencer.  I don't know if that

19   is or not.

20   Q.  I want to ask you about a silencer.  Have you ever

21   heard the term flasher?

22   A.  No.

23   Q.  You are trained in firearms, aren't you?

24   A.  I am trained with my firearm, firearms that I carry.

25   Q.  Are you told that every semi-automatic weapon is

United States of America v. Michael Anthony Clark

Patrick Caldwell - Cross
Wednesday/10-12-2006                              114

1     called an UZI or an AK47?

2        A.  No, sir.

3        Q.  You know that UZI is a particular brand, emanating

4     from I believe, Israel, correct?

5        A.  Like I said yesterday, that is what I always

6     referred to that type of weapon.

7        Q.  In your training --

8        A.  That's what I always called it.

9        Q.  In your training did they tell you to call every

10    semi-automatic an UZI?

11       A.  No.

12       Q.  What does AK47 stand for?  AK47?  Isn't that a brand

13    as well?

14       A.  Yes, sir.

15       Q.  But you didn't see an UZI or an AK47, did you?

16       A.  No, sir.

17       Q.  So your training on identification of firearms and

18    their parts is based not on what you learned at Quantico

19    or whatever other place you went but basically what you

20    picked up on the job.  Would that be fair to say?

21       A.  I just look at the weapon and read it off of there.

22    I misspoke when I called it, that's what I always referred

23    to those two weapons as.  And that was my --

24       Q.  I am trying to find out where you learned to term,

25    to use those terms UZI and AK47?

*United States of America v. Michael Anthony Clark*

Patrick Caldwell - Cross
Wednesday/10-12-2006                    115

1    A.   Where did I learn those term?

2    Q.   Where did you learn those terms?

3    A.   Personal experiences.

4    Q.   Are you a hunter?

5    A.   Yes, sir.

6    Q.   Do you ever hunt with semi-automatic weapons?

7    A.   No, sir.

8    Q.   Are you aware -- have you ever been hunting with

9    people who do?

10   A.   Yes, sir.

11   Q.   And you never have been with someone who used a

12   flasher as you called it, a silencer, to muffle the sound

13   as to not to scare off the deer or whatever game you might

14   be hunting?  You never heard of that?

15   A.   No, sir.

16   Q.   Did you do any background on what you called a

17   silencer, to determine if that was illegal in any fashion?

18   A.   I remember speaking to Paul Sores of the FBI and

19   Roland Herman with ATF about it.

20   Q.   Did you go into a gun store and say, hey, can I buy

21   a silencer or a flasher for a weapon?  Did you ever do

22   that?

23   A.   I've never done that, no, sir.

24   Q.   Did you ever check the regulations to determine

25   what's legal on not legal?

*United States of America v. Michael Anthony Clark*

*Patrick Caldwell - Cross*
*Wednesday/10-12-2006*                        116

1      **A.**  I have not.  No, sir.

2      **Q.**  And as you sit here today you cannot say that a

3    single item on that table is inherently illegal, can you?

4      **A.**  No, sir.

5      **Q.**  But tat's the only thing you took out of the Prairie

6    house except for the DTE energy bill, correct?

7      **A.**  Correct.

8      **Q.**  Now, a lot of what you believed when you inherited

9    the case was based on information from confidential

10   sources, correct?

11     **A.**  Information I got from confidential sources,

12   correct.

13     **Q.**  And at the time you took over there were four of

14   them, correct?

15     **A.**  Approximately, yes.

16     **Q.**  And some of them were paid, right?

17     **A.**  Yes, sir.

18     **Q.**  Some of them were paying pay a lot of money, weren't

19   they?  When I say lot of money --

20     **A.**  I don't know what a lot is.

21     **Q.**  Would you consider a hundred thousand dollars a lot

22   in one year?

23     **A.**  Yes, sir.

24     **Q.**  And at least in one year in 2002 by June at least

25   one informant had been made over $99,000, correct?

*United States of America v. Michael Anthony Clark*

**State of Michigan**
**Department of Corrections**
"*Committed to Protect, Dedicated to Success*"

Grandview Plaza
P.O. Box 30003
Lansing, Michigan 48909

XXX LANS MI 488 3/21/1

PRESORTED
FIRST CLASS



U.S. POSTAGE >> PITNEY BOWES

ZIP 48906
02 1W
0001139561 2 MAR 20 2018

$ 000.37⁸

hos

Federal Correctional Institution

Michael Clark, 28321-039

P.O Box. 23811

Tucson, AR 85734

BTD-PSB 85734



STATE OF MICHIGAN
## DEPARTMENT OF CORRECTIONS
LANSING

RICK SNYDER
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

March 16, 2018

Michael Clark
28321-039
Federal Correctional Institution
PO Box 23811
Tucson, AR 85734-811

Dear Mr. Clark:

Your request for documents under the Michigan Freedom of Information Act (FOIA) was received in the Office of Legal Affairs. Please be informed that under sections 1(2) and 2(c) of the Michigan Freedom of Information Act (FOIA), MCL 15.231 et seq, an individual serving a sentence of imprisonment in a state or county correctional facility in this state or any other state, or in a federal correctional facility, is not covered under the FOIA as among those who may access the statute. Therefore, your request will not be processed as a FOIA request.

Sincerely,


Brianna Newton, Analyst/Assistant FOIA Coordinator
FOIA Section
Office of Legal Affairs

Scott Lewis Private Investigations
18530 Mack Ave., #134
Grosse Pointe Farms, MI 48236

METROPLEX MI 480

29 JAN 2019 PM 16 L

85734-361111

MW

Michael Anthony Clark
Register Number 28321-039
Federal Correctional Institution-Tucson
Post Office Box 23811
Tucson, Arizona 85734-811





**SCOTT LEWIS**
PRIVATE INVESTIGATIONS

January 29, 2019

Michael Anthony Clark
Register Number 28321-039
Federal Correctional Institution-Tucson
Post Office Box 23811
Tucson, Arizona 85734-811

Dear Mr. Clark,

Prior to receiving your letter I called the Oakland County Department of Vital
Records to inquire about getting CPL records. They told me that gun permit records
are not public and they can only be obtained with a court order. I called Linda King
and advised her of this.

As for the 2000 homicide case that was dismissed, I went to the Wayne County
Circuit Court on line records site and searched your name. There are no records
showing a 2000 homicide case in your name.

I called the Wayne County Clerk's office. They also checked under your name and
found no homicide cases for any year and specifically nothing from 2000. The clerk
said the only possibilities could be that you were charged and tried in another
county or you were charged under an alias in Wayne County. She said that even
when someone is acquitted, the register of actions is still kept in their computer
system.

I'm sorry I couldn't be of more help.

Sincerely,

Scott Lewis

Scott Lewis Private Investigations
18530 Mack Avenue #134
Grosse Pointe Farms, MI 48236

BENNY N. NAPOLEON
*Wayne County Sheriff*

**OFFICE OF THE
SHERIFF**

4747 WOODWARD AVE.
DETROIT, MI 48201

METROPLEX MI 480

23 APR 2019 PM 25 L

Michael Anthony Clark, Prisoner #28321-039
Federal Correctional Institution - Tucson
PO Box 23811
Tucson, AZ 85734-811

M N

85734-381111

FOIA





**Benny N. Napoleon**
*Wayne County Sheriff*

April 23, 2019

Michael Anthony Clark, Prisoner #28321-039
Federal Correctional Institution - Tucson
PO Box 23811
Tucson, AZ  85734-811

**Re:    FOIA Request with postmark of April 8, 2019, seeking records regarding Michael Anthony Clark[1]**

Dear Mr. Clark:

The Wayne County Sheriff's Office received the above-mentioned request by U.S. mail on April 18, 2019.

Your request is denied, because the Michigan Freedom of Information Act does not allow a person serving a sentence of imprisonment in a state, county, or federal correctional facility to make a request for records (MCL 15.232(c)).

Best Regards,

Cynthia D. Golson
Department Supervisor/FOIA Officer
Office of the Sheriff

/cdg

cc:    FOIA Coordinator
       File 19-204

---

[1] The legally required posting of the "Wayne County Freedom of Information Act Procedures & Guidelines," as well as the "Wayne County Summary of FOIA Procedures & Guidelines," are available for viewing under the "Public Records" section of the County's website at the following web address:  http://waynecounty.com/county/foia.htm

CATHY M. GARRETT
WAYNE COUNTY CLERK

WAYNE COUNTY CLERK'S OFFICE
FOIA OFFICER
TWO WOODWARD AVE., SUITE 211
DETROIT, MI 48226

E-37   USPS   Printed on recycled paper   ♻

MI 480
24 MAY '19
PM 15 1



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 48226
02 1W
0001397615 MAY 24 2019

$ 000.50⁰



MO2

Michael Anthony Clark #28391-039
Federal Correctional Installation - Tucson
P.o. Box 23811
Tucson, Arizona 85734
85734-381117



# *Office of the County Clerk*

**Cathy M. Garrett**
*Wayne County Clerk*

May 23, 2019

Michael Anthony Clark # 28321-039
Federal Correctional Installation - Tucson
P.O. Box 23811
Tucson, Arizona 85734-811

RE:  Freedom of Information Act Request received Wednesday, May 22, 2019, for all information concerning the Name: Michael Anthony Clark, Social Security Number: XXX-XX-XXXX, Date of Birth: XX-XX-XXXX, City: Detroit, State: Michigan, County: United States.[1]

Dear Mr. Clark:

Your request for information has been received on Wednesday, May 22, 2019. Your FOIA request has been denied because the Michigan Freedom of Information Act does not allow a person serving a sentence of imprisonment in a state, county, or federal correctional facility to make a request for records (MCL 11.232(c)).
However, you may send a written request to the Records Department, Frank Murphy Hall of Justice.

You have the right to do either of the following with regard to the denial of your request:

(1) Submit a written appeal to the County Executive, which specifically states the word "appeal" and states the reason or reasons the denial should be reversed.

OR

(2) Commence an action in the circuit court to compel disclosure. Should you prevail, you will be entitled to have reasonable attorneys' fees, costs and disbursements assessed against the County by the court. If you or the County prevails in part, the court may, in its discretion, award you all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements. If the court determines that the County has been arbitrary and capricious in its denial, you will also be entitled to punitive damages in the amount of $1,000.00.

Sincerely,

Suzanne Stewart
FOIA Officer

Denial Approved

Janet Anderson-Davis
Assistant Corporation Counsel

Cc:     FOIA File
        Janet Anderson-Davis
        Candice Smith-Parker

---

[1] The legally required posting of the "Wayne County Freedom of Information Act Procedures & Guidelines, " as well as the "Wayne County Summary of FOIA Procedures & Guidelines, " are available for viewing under the "Public Records" section of the County's website at the following web address: http://waynecounty.com/county/foia.htm

*211 Coleman A. Young Municipal Center, Detroit, MI 48226*        **(313) 224-6262  Fax (313) 224-5364**

BENNY N. NAPOLEON
*Wayne County Sheriff*
OFFICE OF THE
SHERIFF
4747 WOODWARD AVE.
DETROIT, MI 48201

METROPLEX MI 480

24 MAY 2019 PM 9 L

Michael Anthony Clark, Prisoner #28321-039
Federal Correctional Institution - Tucson
PO Box 23811
Tucson, AZ  85734-811

85734-381111

FOIA



Benny N. Napoleon
*Wayne County Sheriff*

May 23, 2019

Michael Anthony Clark, Prisoner #28321-039
Federal Correctional Institution - Tucson
PO Box 23811
Tucson, AZ 85734-811

**Re:    FOIA Request of April 24, 2019, seeking records regarding Michael Anthony Clark[1]**

Dear Mr. Clark:

The Wayne County Sheriff's Office received the above-mentioned request by U.S. mail on May 20, 2019.

Your request is denied, because the Michigan Freedom of Information Act does not allow a person serving a sentence of imprisonment in a state, county, or federal correctional facility to make a request for records (MCL 15.232(c)).

Best Regards,

Cynthia D. Golson
Department Supervisor/FOIA Officer
Office of the Sheriff

/cdg

cc:     FOIA Coordinator
        File 19-247

---

[1] The legally required posting of the "Wayne County Freedom of Information Act Procedures & Guidelines," as well as the "Wayne County Summary of FOIA Procedures & Guidelines," are available for viewing under the "Public Records" section of the County's website at the following web address: http://waynecounty.com/county/foia.htm